OPINION
{¶ 1} On October 22, 2003, plaintiffs-appellants, Penny Sue Hilty ("appellant") and her husband, Kirk Hilty, filed suit against appellee, Hen Topaz ("appellee"), alleging negligence and strict liability pursuant to R.C. 955.28 and loss of consortium due to injuries appellant sustained while delivering mail for the United States Postal Service to an apartment building owned by appellee. Appellee filed a motion for summary judgment which the trial court granted. Appellants filed a notice of appeal and raise the following assignment of error:
1. The Trial Court erred in granting Summary Judgment and finding as a matter of law Defendant-Appellee was not a harborer of his tenant's dog that attacked Plaintiff-Appellant Penny Hilty and therefore not liable under O.R.C. § 995.28(B).
 {¶ 2} Appellee owns an apartment building which contains four separate apartments that he had purchased in April 2002. He had a new written lease agreement signed by Kelly Sharon ("Sharon") and Herman Sanders (" Sanders"), who were tenants in one of the apartments and have two dogs that are Rottweiler-German Shepherd mix. On July 26, 2002, appellant was delivering mail in that area and was walking through the backyard when she saw the dogs charging toward her at full speed and growling. (Appellant depo. at 77.) She stopped walking and started to back up slowly and attempted to use her mace. (Id. at 78.) Appellant testified in her deposition that she did not say anything to the dogs but tripped as she was backing away from them. (Id. at 83.) Her back hit the ground and she injured her L-1 vertebra in her lower back. The emergency squad took her to the hospital where she had surgery the same day. Appellant does not know what made her fall, she does not remember her foot catching on anything and the dogs did not knock her down. (Id. at 83; 86.)
 {¶ 3} Sharon testified that she was standing at her door talking to her next door neighbor when one of her two dogs, Max, went outside. He ran towards appellant but Sharon was able to catch him and stop him before he reached appellant. (Sharon depo. at 29.) Sharon grabbed Max and turned around to walk away and heard appellant yell. When she turned back again, appellant was on the ground and asked her to call 9-1-1. (Id. at 29.) Sharon testified that Max never was closer to appellant than three to four paces and was not barking. (Id. at 41-42.) Sharon did not see the fall but testified that appellant told her she fell backwards because the dog scared her. (Id. at 42; 46.) Sharon also stated that she had never had trouble with the dogs, they had never charged anyone in a mean manner and the dogs had never bitten anyone. (Id. at 27-28.) Sharon stated that before the incident, appellee had told her to remove the dogs. Sharon also testified that although she told appellee that the dogs would sleep at her mother's house, they never did. (Id. at 11.) She also testified that appellee kept asking her when she was going to remove the dogs and that she kept giving him excuses or lying to him. (Id. at 16.)
 {¶ 4} Appellee testified that he purchased the apartment building in April 2002, and all the tenants signed new leases which prohibited pets. (Appellee depo. at 14; 21; 24.) Although Sharon and Sanders had two dogs, appellee did not agree to allow the couple to keep them. Appellee further testified that he had several conversations with Sharon and Saunders about removing the dogs. (Id. at 24.) Appellee was told that Sanders was looking for a new place for the dogs and that they would be removed. (Id. at 25.)
 {¶ 5} By the assignment of error, appellants contend that the trial court erred in granting summary judgment and finding as a matter of law that appellee was not a harborer of his tenants' dogs and therefore not liable pursuant to R.C. 995.28(B). To prevail on a motion for summary judgment, the moving party must demonstrate that, when the evidence is construed most strongly in favor of the nonmoving party, no genuine issue of material fact remains to be litigated and that it is entitled to judgment as a matter of law. Civ.R. 56(C); Harless v. Willis Day WarehousingCo. (1978), 54 Ohio St.2d 64. A genuine issue of material fact exists unless it is clear that reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party. Williams v. First United Church of Christ (1974),37 Ohio St.2d 150, 151. Summary judgment is a procedural device to terminate litigation, so it must be awarded cautiously, with any doubts resolved in favor of the nonmoving party. Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 358-359.
 {¶ 6} When an appellate court reviews a trial court's disposition of a summary judgment motion, the appellate court applies the same standard as applied by the trial court. Maustv. Bank One Columbus, N.A. (1992), 83 Ohio App.3d 103, 107. An appellate court's review of a summary judgment disposition is independent and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Thus, in determining whether a trial court properly granted a summary judgment motion, an appellate court must review the evidence in accordance with the standard set forth in Civ.R. 56, as well as the applicable law. Murphy,
supra.
 {¶ 7} Although appellants' complaint alleged negligence and strict liability pursuant to R.C. 955.28(B), appellants have only appealed the trial court's finding concerning R.C.955.28(B).[1] R.C. 955.28(B) provides, as follows:
The owner, keeper, or harborer of a dog is liable in damages for any injury, death, or loss to person or property that is caused by the dog, unless the injury, death or loss was caused to the person or property of an individual who, at the time, was committing or attempting to commit a trespass or other criminal offense on the property of the owner, keeper, or harborer, or was committing or attempting to commit a criminal offense against any person, or was teasing, tormenting, or abusing the dog on the owner's keeper's or harborer's property.
 {¶ 8} An owner "is the person to whom the dogs belong and the `keeper' is the one having physical charge or care of the dogs."Godsey v. Franz (Mar. 13, 1992), Williams App. No. 91WM000008, quoting Garrard v. McComas (1982), 5 Ohio App.3d 179, 182. To determine whether a person is a "harborer" of a dog, "the focus shifts from possession and control over the dog to possession and control of the premises where the dog lives." Godsey. A harborer is one who is in possession and control of the premises where the dog lives and silently acquiesces in the dog being kept there by the owner. Flint v. Holbrook (1992),80 Ohio App.3d 21, 25, citing Sengel v. Maddox (1945), 31 O.O. 201. Acquiescence requires some intent. Bundy v. Sky Meadows TrailerPark (Oct. 23, 1989), Butler App. No. 89-01-002. In Sengel,supra, the court determined that liability as a harborer is established if the owner of the premises knowingly permitted the dog to live and make its home on his land
 {¶ 9} A landlord may be liable as a harborer if he permitted the tenant's dog in common areas since a landlord is not in possession and control of the tenant's premises. A lease agreement transfers both occupation and control of the subject premises to the tenant. Burgess v. Tackas (1998),125 Ohio App.3d 249, 297-298.
 {¶ 10} In this case, appellants argue there is a question of material fact concerning whether appellee harbored the dogs by acquiescing in their presence on appellee's premises. The written lease transferred possession and control of the interior of 4953 Myers Road and mentions the yard where the incident occurred, as follows:
* * * [T]he sum of $360 for the first month's rent of the premises owned by said Management and located at 4953 Myers Rd. Building #4953 Columbus, OH 43232 hereinafter called the premises. * * *
In considered hereof and of the use or occupancy of the said premises, Resident agrees:
1. To maintain said premises in a clean, orderly, and law-abiding manner and to keep the yards thereof free of weeds, debris, and/or material that may become unsightly or a detriment to the appearance of said premises. Management shall have the right to enter and inspect said premises at any and all reasonable times.
 {¶ 11} Appellee testified that he cut the grass in the yard. (Appellee depo. at 43.) While there may be an issue of fact concerning who controlled the yard, it is not a material question of fact because there is no evidence that appellee "acquiesced" in the dogs being present. Although appellee testified that he knew his tenants owned the dogs and kept them at the apartment, he also testified that the lease prohibited the pets and he continually asked the tenants to remove the dogs. Appellee testified that he was told by the tenants that they were getting rid of the dogs and only baby-sitting them until another home was found. (Id. at 24-25.) Sharon testified that she had told appellee that the dogs would sleep at her mother's house but they never did. (Sharon depo. at 11.) She also testified that appellee kept asking her when she was going to remove the dogs and she kept giving him excuses or lying to him. (Id. at 16.) Sharon further stated that appellee had told her to remove the dogs or he would ask her to leave the apartment. (Id. at 17.)
 {¶ 12} Appellants argue that appellee saw the dogs loose in the yard before the attack. However, that incident occurred once during the first month that appellee owned the building and appellee had been assured many times after seeing the dogs that they would be removed.
 {¶ 13} This case is similar to Samas v. Holliman, Franklin App. No. 02AP-947, 2003-Ohio-1647. In Samas, the landlords rented an apartment to a tenant and the lease prohibited pets. The tenant owned two pit bulls who escaped the property and attacked a dog owned by the plaintiff. The plaintiff was injured while attempting to separate the dogs and filed suit against the pit bull owners and the landlords. The trial court granted summary judgment finding that the landlords had no control over the premises and this court affirmed. There was no evidence that the dogs were vicious and the tenant had told the landlords that the dogs would be leaving the premises soon.
 {¶ 14} On the record before us, we perceive no genuine issue of fact with respect to whether appellee acquiesced to the presence of the dogs on the leased premises. Thus, appellee cannot be found to be a harborer of the dogs, and summary judgment in his favor is appropriate.
 {¶ 15} Accordingly, appellants' assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
Bowman and Brown, JJ., concur.
[1] The common law negligence claim would fail because there is no evidence that appellee harbored the dogs with knowledge of any vicious tendencies. Burgess v. Tackas (1998),125 Ohio App.3d 294, 297.